

# In the Missouri Court of Appeals Eastern District

## DIVISION FIVE

| | | |
|---|---|---|
| DALE G. MASSMAN and MARANDA J. MASSMAN, | ) ) ) | No. ED104053 |
| Respondents, | ) ) | Appeal from the Circuit Court of Osage County |
| vs. | ) ) ) | Honorable Robert D. Schollmeyer |
| NICOLE MASSMAN, | ) ) | |
| Appellant. | ) | Filed: December 6, 2016 |

The mother, Nicole Massman, appeals the judgment entered by the Circuit Court of Osage County granting visitation with her minor child to the paternal grandparents, Dale and Maranda Massman. The grandparent-visitation statute requires, *inter alia*, that a grandparent be unreasonably denied visitation for a period exceeding 90 days in order to obtain court-ordered visitation. The grandparents neither pled nor proved such a denial of visitation. In failing to consider this statutory requirement, the trial court erroneously applied the law. Therefore, we reverse.

### Factual and Procedural Background

The mother and the child's father, Brent Massman, were married and had one child, born in 2012. The grandparents, Dale and Maranda Massman, were the father's parents. The mother and the father were separated and living apart when the father died in December 2014, shortly before the child's third birthday. At the time of his death, the father had custody of the child on

alternate weekends and every Wednesday night, and the grandparents regularly spent time with the child during the father's custody time.

According to the grandmother's testimony, following the father's death, the grandparents saw the child four times in January,[1] twice in February,[2] and twice in March 2015.[3] The grandmother testified that they also sometimes saw the child at church services, attended parties at the child's daycare, and were never denied the opportunity to attend events at the daycare. She stated that she telephoned the mother, sometimes numerous times per week, but that the mother did not always call back. The grandparents filed a petition in mid-April 2015 alleging that the mother had restricted their contact with the child and seeking court-ordered visitation with her. The grandparents sought "at a minimum" an amount of time comparable to a traditional *Siegenthaler* schedule: the entirety of every other weekend, every Wednesday evening, every other Thanksgiving, days immediately before and after Christmas, days at Easter, the day before or after the child's birthday, and two weeks each summer.[4] The grandparents also asked the court to order the mother to keep them informed regarding the child's medical condition. The grandparents' petition did not identify any period when they had been denied visitation for more than 90 days.

---

[1] Our review of the transcript reveals that the grandparents saw the child for several hours at their home in early January 2015 while they wrote thank-you notes after the father's funeral, that they were with the child at church on January 18, 2015 for a Mass for the father, that they took cupcakes to the child's daycare in January to celebrate her birthday, and that they had the child for a visit of six to nine hours in late January 2015. In addition, the grandmother testified that she saw the child for "a few minutes" on another day in January when the mother stopped by the grandparents' home to obtain copies of the father's death certificate.

[2] The grandmother testified that the grandparents kept the child on February 8, 2015 while the mother worked. She also explained that she took Valentine's Day gifts to the child on February 28th and "spent a couple hours there that day at her house."

[3] The grandmother testified that the grandparents took the child roller skating on March 6, 2015, and that they kept the child at their house on March 15th.

[4] *Siegenthaler v. Siegenthaler*, 761 S.W.2d 262 (Mo. App. E.D.1988). The *Siegenthaler* schedule "is designed for parents," and "is totally inappropriate for grandparent visitation, which is not intended to equate with parental visitation." *T.W. ex rel. R.W. v. T.H.*, 393 S.W.3d 144, 149 (Mo. App. E.D. 2013)(quoting *Komosa v. Komosa*, 939 S.W.2d 479, 483 (Mo. App. E.D.1997)).

The grandparents visited with the child on a monthly basis after filing their petition although they had no visitation for about 70 days immediately surrounding their petition filing. The grandmother testified at trial that the time they had with the child was not unreasonable, but they wanted a set schedule of visits, including overnight visits with the child. The grandmother stated that she wanted one weekend per month with the child, time at holidays and the child's birthday, and a set schedule.

The mother testified that after the father's funeral, the child suffered from nightmares and night terrors, and awoke screaming some eight to ten times per night. In the year between the father's death and trial, the child's sleep situation had improved so that she was awakening only one to three times per night. The mother testified that she had no objection generally to the child having overnight visits with the grandparents and that she was following the advice of the child's counselor in scheduling visitation and specifically overnight visitation. The mother also stated she did not object to, nor had she ever objected to, the kind of time the grandmother testified that she wanted so long as the mother's weekend work schedule was considered.

The trial court found that the mother "restricted the contact between [the grandparents] and the minor child and the contact that has occurred is found to be unreasonable by this Court pursuant to the terms of Section 452.402.1(2) RSMo."[5] The trial court made no finding that the grandparents had been unreasonably denied visitation for more than 90 days, nor did the court acknowledge section 452.402.1(4), which requires such a denial of visitation. The court granted the grandparents one weekend per month with the child—with overnight visits delayed until recommended by the child's counselor—and a holiday schedule. The court also ordered the mother to inform the child's counselor of the intent to transition the child to overnight visits with

---

[5] All statutory references are to RSMo. (Supp. 2013) except as otherwise indicated. RSMo. (Supp. 2013) contains what we at times refer to as the 2004 version of the statute at issue here.

3

the grandparents as soon as possible and to provide the grandparents with updated documentation about the counselor's recommendations; to inform and update the grandparents about the child's medical condition; to inform the grandparents of school and sporting events so that they could attend; and to allow the grandparents to visit the child at her daycare or school. The mother appeals.

*Discussion*

In two points on appeal, the mother challenges the trial court's finding that she had denied the grandparents reasonable visitation, and the trial court's grant of visitation pursuant to section 452.402. Because we find the mother's second point dispositive, we address it first.

In her second point, the mother claims the trial court erred in awarding the grandparents specific, defined, and enforceable visitation rights with the minor child because under section 452.402.1(4), only a grandparent who has been unreasonably denied visitation with the child for more than 90 days is entitled to court-ordered visitation. The mother contends that the undisputed evidence showed that the grandparents were never denied visitation for any period exceeding 90 days.

We will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Blakely v. Blakely*, 83 S.W.3d 537, 540 (Mo. banc 2002); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Statutory interpretation is an issue of law that we review *de novo. Blakely*, 83 S.W.3d at 540.

Section 452.402.1 gives grandparents limited statutory rights to seek court-ordered visitation with their grandchildren. Section 452.402.1 states:

> The court may grant reasonable visitation rights to the grandparents of the child and issue any necessary orders to enforce the decree. The court may grant grandparent visitation

4

when:

(1) The parents of the child have filed for a dissolution of their marriage. A grandparent shall have the right to intervene in any dissolution action solely on the issue of visitation rights. Grandparents shall also have the right to file a motion to modify the original decree of dissolution to seek visitation rights when visitation has been denied to them; *or*

(2) One parent of the child is deceased and the surviving parent denies reasonable visitation to a parent of the deceased parent of the child; *or*

(3) The child has resided in the grandparent's home for at least six months within the twenty-four month period immediately preceding the filing of the petition; *and*

(4) A grandparent is unreasonably denied visitation with the child for a period exceeding ninety days. However, if the natural parents are legally married to each other and are living together with the child, a grandparent may not file for visitation pursuant to this subdivision.

(Emphases added.)

The mother argues that the clear language of the statute provides that an unreasonable denial of visitation for more than 90 days is a mandatory precondition to an order of visitation under any one of the first three subparts of section 452.402.1. The grandparents counter that only subpart (2), where one parent is deceased, applies in this case. They maintain that the 90-day requirement set forth in subpart (4) pertains only to subpart (3), where the child lived with the grandparents for six months within the last two years, instead of applying in conjunction with each of the other subparts, (1) [parents' divorce], (2) [one parent deceased], and (3) [child lived with grandparents] as the mother contends.

The "primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." *Parktown Imports, Inc. v. Audi of Am., Inc.*, 278 S.W.3d 670, 672 (Mo. banc 2009). The legislature enacted the current version of section 452.402.1 in 2004. The 2004 revision eliminated two references to visitation "rights," including one such reference in subpart (2), so that the affected language refers simply to

5

"visitation"; inserted the word "or" between subparts (1) and (2) and between subparts (2) and (3); inserted the word "and" between subpart (3) and subpart (4); eliminated the word "or" following subpart (4); and eliminated former subpart (5) providing for visitation after adoption by a stepparent, another grandparent, or other blood relative. H.B. 1453, sec. A, 92nd Gen. Assem., 2d Reg. Sess. (Mo. 2004). The word "or" is generally used as a disjunctive, while the word "and" is generally used as a conjunctive. *Pfeifer v. Deal*, Case No. SD33462, 2015 WL 5157587, at *3 (Mo. App. S.D. Sept. 2, 2015).[6]

Our research reveals only one case that analyzes and interprets the relationship of subpart (4) to subparts (1), (2), and (3) of subsection 452.401.1 as currently written. In *Pfeifer v. Deal*, the mother was deceased, and the maternal grandfather sought regular visitation although his petition identified no time span in which the father had denied visitation for more than 90 days. *Id.* at *1-*2. The trial court granted the grandfather visitation based exclusively on subpart (2) of section 452.402.1 as the parent of the child's deceased parent. *Id.* at *2. The Southern District was called on to determine whether the grandfather was also required to meet the criteria contained in subpart (4), an unreasonable denial of visitation for more than 90 days. *Id.* The Court reversed the trial court's grant of visitation, holding that "a plain-meaning interpretation of the 2004 version [of section 452.402.1] would require any grandparent seeking visitation to satisfy subpart (4) in addition to either subpart (1), subpart (2), or subpart (3)." *Id.* at *3-*4.

Thus, under the plain language of the statute, a grandparent may not rely solely on any single subpart to obtain grandparent visitation, but must establish that either subpart (1) or (2) or (3) applies in conjunction with subpart (4). *Id.* at *3; *see also, In re Adoption of E.N.C.*, 458 S.W.3d 387, 402 (Mo. App. E.D. 2014)(stating in *dicta* that section 452.402 has been amended

---

[6] *Pfeifer v. Deal* was mandated September 21, 2015 with the parties having filed no motions for rehearing or transfer.

6

to provide for grandparent visitation when one of three circumstances is met first, plus an additional requirement that the grandparent be unreasonably denied visitation for more than 90 days).[7]

Earlier cases also support this interpretation because the provision requiring an unreasonable denial of visitation for more than 90 days prevents the Missouri grandparent-visitation statute from being held unconstitutional. In *Herndon v. Tuhey*, our Supreme Court stated:

> Missouri's statute is reasonable both because it contemplates only a minimal intrusion on the family relationship and because it is narrowly tailored to adequately protect the interests of parents and children. The statute provides that a court may grant visitation to a grandparent only if the grandparent has been unreasonably denied visitation for more than ninety days.

857 S.W.2d 203, 210 (Mo. banc 1993). The *Herndon* Court continued:

> Because *the legislature set ninety days as a precondition*, this is an indication to the courts that visitation should not be excessive, should not be on a par with parental visitation in custody matters, and should not necessarily be commensurate with the contact between the grandparents and grandchild prior to the deterioration of relations between the parties. Our interpretation is based in part on the fact that if the statute allowed a great amount of visitation we would be more likely to find an undue burden on the family and hold that these *subsections* are unconstitutional.

*Id.* at 210-211 (emphases added). The *Herndon* Court stated no fewer than four times that unreasonable denial of visitation for more than 90 days is a prerequisite to court-ordered grandparent visitation. *Id.* at 210.

Nine years later in *Blakely v. Blakely*, our Supreme Court reaffirmed *Herndon*'s narrow interpretation of Missouri's grandparent-visitation statute, and held that, as so interpreted, the

---

[7] *Contra In re J.D.S.*, 482 S.W.3d 431, 439 (Mo. App. W.D. 2016). We recognize that *J.D.S.* states in *dicta* that section 452.402 allows a court to grant visitation to a grandparent in three limited circumstances, and ties the 90-day requirement to subpart (3) only. 482 S.W.3d at 439. However, this casual reading of section 452.402.1 ignores the structure of the statute, and ignores our Supreme Court's constitutional analysis and consequent narrow interpretation of Missouri's grandparent-visitation statute, which we shall further consider.

statute comports with the standards set forth by the U.S. Supreme Court in *Troxel v. Granville*, 530 U.S. 57 (2000). 83 S.W.3d at 544. In distinguishing the Missouri statute from the Washington statute deemed unconstitutional as applied by the U.S. Supreme Court in *Troxel*, the Missouri Supreme Court stated:

> In addition, unlike Washington, Missouri's legislature has balanced the interests involved and provided that to be entitled to visitation, *grandparents must meet the threshold requirement of demonstrating that parents have "unreasonably denied" visitation for a period exceeding 90 days*. The fact that no visitation can be ordered unless the parents have entirely denied visitation for a period of 90 days provides the second important distinction between the two statutes.[8]

*Id.* (emphasis added)(internal citation omitted).

"The Troxels would not have been able to meet a basic condition precedent to a visitation order in Missouri—a showing of a total denial of visitation for at least 90 days." *Id.* at 545. Our Supreme Court's observation is significant because the family situation in *Troxel* was similar to the situation in our case. As here, the Troxel grandparents were the parents of the deceased father, and the mother had offered the grandparents limited monthly visitation, which the grandparents rebuffed. *Id.* at 542, 545. Our Supreme Court's statement supports the proposition that the condition precedent cited in *Blakely* should apply here, where the grandparents seek visitation under section 452.402.1(2) as the parents of the child's deceased parent.

After the *Blakely* decision, the legislature amended the statute twice, the latter amendment occurring in 2004 to create the current relationship among the subparts of subsection 452.402.1.[9] The requirements for court-ordered visitation now indicate that a grandparent must

---

[8] Other important distinctions identified between Missouri's section 452.402 RSMo. (2000) and the Washington statute were: Missouri limits court-ordered visitation to grandparents while Washington allowed visitation for *any* person; Missouri grandparents have the burden to prove that denial of visitation was unreasonable; and the Missouri statute provides procedural safeguards for the court's determination of the child's best interest. *Blakely*, 83 S.W.3d at 544-45.

[9] Section 452.402.1 RSMo. (2000) as considered in *Blakely* stated:

> The court may grant reasonable visitation rights to the grandparents of the child and issue any necessary

meet the criteria of subpart (1) or (2) or (3) and subpart (4) in order to obtain court-ordered visitation. The grandparents argue that the 2004 amendment renders the *Herndon* and *Blakely* decisions inapposite because those cases were decided under prior versions of section 452.402.1. It is true that our Supreme Court decided *Herndon* and *Blakely* under different configurations of section 452.402.1. However, the substance of the grandparent-visitation statute has not changed so as to affect the Court's decisions in *Herndon* and *Blakely. Bryan v. Garrison*, 187 S.W.3d 900, 911 n.8 (Mo. App. W.D. 2006). Consequently, the cases remain vital. Both cases addressed the constitutionality of Missouri's grandparent-visitation statute, and determined that the threshold precondition of an unreasonable denial of visitation for more than 90 days aided the statute in withstanding constitutional scrutiny. *Blakely*, 83 S.W.3d at 544; *Herndon*, 857 S.W.2d at 210-11.

The provision requiring an unreasonable denial of visitation for more than 90 days could only help the statute pass constitutional muster if it applied to all grandparents covered by the statute, not only to some grandparents covered by the statute in some situations. Although the *Herndon* and *Blakely* Courts construed the constitutionality of the specific subpart requiring an unreasonable denial of visitation for more than 90 days and not the other subparts of section 452.402.1, "it is clear that the occasional, minimal restriction recognized by the *Herndon* Court is necessary *for all of section 452.402 to be constitutional." Bryan*, 187 S.W.3d at 911

---

orders to enforce the decree. The court may grant grandparent visitation when:
(1) The parents of the child have filed for a dissolution of their marriage. A grandparent shall have the right to intervene in any dissolution action solely on the issue of visitation rights. Grandparents shall also have the right to file a motion to modify the original decree of dissolution to seek visitation rights when such rights have been denied to them;
(2) One parent of the child is deceased and the surviving parent denies reasonable visitation rights;
(3) A grandparent is unreasonably denied visitation with the child for a period exceeding 90 days; or
(4) The child is adopted by a stepparent, another grandparent or other blood relative.

(emphasis added); *Hampton v. Hampton*, 17 S.W.3d 599, 604 (Mo. App. W.D. 2000). "[T]he constitutional constraints recognized in *Herndon* govern all sub[parts] of section 452.402.1." *Id.* "The teaching of *Herndon* is that, when a constitutionally protected fundamental right of privacy is at stake, the government can impede exercise of that right only if the impediment is minimal." *Id.* at 605. This must be the case no matter the subpart of section 452.402.1 from which the intrusion results, including "from the refusal of a parent whose spouse has died to permit reasonable grandparent visitation under section 452.402.1(2)." *Id.*

The 2004 amendment revising the criteria for visitation to the current subpart (1) or (2) or (3) and (4) configuration indicates that the legislature sought to clarify and confirm the Supreme Court's interpretation in *Blakely* that "to be entitled to visitation, grandparents must meet the threshold requirement of demonstrating that parents have 'unreasonably denied' visitation for a period exceeding 90 days." 83 S.W.3d at 544. The requirement of subpart (4) sets a denial of visitation in excess of 90 days as a base that allows a court to then evaluate whether the denial of visitation is "unreasonable" under the facts of a particular case. In short, subpart (4) sets the specified period as a precondition to obtaining court-ordered visitation under any other subpart of section 452.402.1.

For the foregoing reasons, we conclude that section 452.402.1 requires any grandparent seeking visitation to satisfy the criteria of subpart (4)—an unreasonable denial of visitation for more than 90 days—in addition to one of the criteria contained in subpart (1) [parents' divorce] or subpart (2) [one parent deceased] or subpart (3) [child lived in grandparent's home for six months].

The grandparents argue that if we conclude the statute requires unreasonable denial of visitation for more than 90 days as a precondition to court-ordered visitation, then the trial court

10

was still able to determine that they were in fact denied visitation for more than 90 days. They maintain that "there was some visitation within the 90 days, but that does not prohibit the trial court from finding that Mother still unreasonably denied visitation for a period exceeding 90 days." Essentially, the grandparents argue that some of their visits—such as those involving a couple of hours when dropping off gifts for the child, attending a party with the child at her daycare, or having the child in their home for several hours while they wrote thank-you notes after the father's funeral—should not count because the visits perhaps were not as long or as involved or as private as the grandparents wished. In *Blakely*, the Supreme Court upheld the trial court's judgment granting the grandparents visitation for two hours every 90 days, not in the grandparents' home, and with the parents' presence allowed during the visit. 83 S.W.3d at 540, 548. The visitation affirmed in *Blakely* amounted to less visitation than what the grandparents here argue should not count. This argument lacks merit.

*Conclusion*

Section 452.402.1 requires that a grandparent meet the criteria of either subpart (1) or subpart (2) or subpart (3) plus an unreasonable denial of visitation for more than 90 days as contained in subpart (4) in order to obtain court-ordered visitation. Because the grandparents neither pled nor proved such a denial of visitation, they failed to meet the threshold requirement for court-ordered visitation under the statute. The trial court erroneously applied the law in granting visitation without consideration of the requirements of section 452.402.1(4) and based solely on the requirements of section 452.402.1(2). Consequently, we reverse the trial court's judgment.[10]

_____
LAWRENCE E. MOONEY, JUDGE

---

[10] This disposition renders the mother's first point moot, and we shall not consider it.

11

PHILIP M. HESS, C.J. and
JOSEPH L. WALSH, III, SP.J., concur.